## Schiavone v. De Mayo

*Robert C. Duffy* and *Meyer E. Cooper*, for plaintiff.

JONES, J., August 4, 1952.—This is an action in trespass instituted by the plaintiff to recover from the defendant an alleged unpaid balance of an indebtedness arising from a contract relationship between the plaintiff and the defendant.

The record reveals the following facts:

An Affidavit to Hold to Bail in Trespass wherein plaintiff claimed as damages the unpaid balance of an indebtedness in the amount of $415.00 and whereon was endorsed "May 8, 1950 Bail is set in the sum of $200. . . ." followed by the name of a judge of this court was filed May 9, 1950. A praecipe for the issue of a capias ad respondendum in trespass, Bail $200.00, was filed the same day. This was followed by the issuing of the writ returnable the first Monday of June, 1950.

The writ commanded the sheriff to "take . . . defendant if he shall be found in your bailiwick, and him safely keep, until he shall have given bail or made deposit according to law, . . ."

To the mandate of the writ, the sheriff made the following return: "Served and made known to William DeMayo the within named defendant by handing a true and attested copy of the within writ Capias ad Respondendum Trespass to Mrs. DeMayo, an adult member of the family of said defendant, who stated that her relationship to said defendant is that of Wife, on June 3rd, 1950, at 10:00 o'clock A.M., Eastern Standard Time, at 1923 So. Mole St. in the County of Philadelphia, State of Pennsylvania, the dwelling house of said defendant." [1]

Thereafter, June 16, 1950, the plaintiff filed a complaint in trespass wherein he averred the circumstances upon which he based his claim and right to recover from the defendant the sum of $415.00, being the unpaid balance of an indebtedness of $500.00.

The filing of the complaint was followed by the filing upon June 19, 1950 of an affidavit of an employee of counsel for the plaintiff averring that "a copy of the Complaint in Trespass duly endorsed with notice to

---

[1] "The sheriff is the executive officer of the court. . . ." Mangan v. Smith, 71 D. & C. 38, 41 (1/31/50).

plead within twenty (20) days" was mailed to the defendant at his alleged place of residence, upon June 16, 1950. After the expiration of twenty days from the date of the mailing of the complaint as averred in the said affidavit, no appearance having been entered or pleading filed by or on behalf of the defendant, the prothonotary, who is the clerk of this court, upon July 12, 1950, on praecipe of plaintiff's counsel and upon the filing of an affidavit of non-military service, entered judgment against the defendant and in favor of the plaintiff "for want of an answer or appearance."

Thereafter the action was listed for trial for the assessment of damages. It was called for "non-jury" trial upon November 14, 1951 before the writer of this opinion as trial judge. Neither the defendant nor counsel for the defendant appearing, the trial proceeded. The sole evidence presented in support of the complaint was the testimony of the plaintiff that he made two payments of $250. each to the defendant to be expended to secure a theatrical engagement for the three daughters of the plaintiff, that the defendant did not render the services, lost the money in betting and agreed to repay him, that the defendant made payments on account leaving unpaid at the time of the trial the sum of $375. for which sum together with interest thereon the plaintiff sought judgment.

The trial judge, being of the opinion that the judgment entered by the prothonotary was void and that the court was without jurisdiction to conduct the trial, made the following order:

"ORDER

"AND NOW, February 7, 1952, the judgment entered by the clerk of the court for the plaintiff and against the defendant for want of 'an answer or appearance' upon July 12, 1950 is stricken from the record and the trial had November 14, 1951 is a nullity."

The primary and fundamental question involved is the legal validity of the allowance and issue of the capias ad respondendum writ with bail.

If the writ was allowed and issued unlawfully, the writ and its sequences were without legal signification and the court was without jurisdiction over the defendant.

If the writ was not lawful, process thereon was futile, its service, the subsequent service by mail of a copy of the plaintiff's complaint and the entry of the summary judgment by the prothonotary "for want of an answer or appearance" were without warrant of law and therefore void.[2] The action was adverse from its inception. At no time was there an appearance by or on behalf of the defendant, nor was any pleading filed by the defendant. Neither prothonotary nor court has authority to enter a judgment for want of an answer.[3]

If the judgment was void, it had "no efficacy at any time"; it was "a mere blur on the record . . . which it is the duty of the court of its own motion to strike off, whenever its attention is called to it"; "it was a nullity and without legal effect."[4] There was, therefore, no authority to list the action for trial, no authority to conduct a trial and make an assessment of damages in favor of the plaintiff and against the defendant based upon the void judgment.

If the writ was unlawful, the court was without jurisdiction "to entertain the case."[5]

---

[2] Pa. R. C. P. Nos. 1009, 1027, 1047.

[3] Pa. R. C. P. Nos. 1045, 1047.

[4] Pantall v. Dickey, 123 Pa. 431 (1/7/1889), infra; Romberger v. Romberger, 290 Pa. 454 (6/25/27), infra; Haverford Twp. S. D. v. Herzog, et al., 314 Pa. 161 (1/30/34), infra; Gilbert Estate, 350 Pa. 13 (6/30/44), infra.

[5] Pantall v. Dickey, 123 Pa. 431, 438 (1/7/1889), infra.

## Was the Writ Lawful?

The writ was allowed and issued upon the affidavit to hold to bail in total disregard of the Act of July 12, 1842, P. L. 339, 12 P.S. Secs. 257-272.[6] The bail was fixed, the writ was allowed and issued upon the unsupported allegations of the plaintiff's affidavit without notice thereof to the defendant and opportunity to be heard before its issue and without the prior filing and service of a complaint.

The affidavit to hold to bail sets forth the origin of the relationship between the plaintiff and the defendant. It discloses a relationship originating in contract and alleges the defendant's breach of the contract. The plaintiff avers therein that the defendant as his agent was given the sum of $500. in two payments of $250. each to be used to secure a theatrical engagement for three daughters of the plaintiff, that the defendant failed to render the services, converted the money to his own use, promised to repay the plaintiff, did make partial payments on account leaving an unpaid indebtedness of $415. which at the time of trial plaintiff testified had been reduced to $375. and which at the time of oral argument plaintiff's counsel stated had been reduced by payments subsequently made. The affidavit consists of ex parte averments charging a conversion of current money by an agent of the plaintiff. The complaint subsequently filed and the testimony of the plaintiff at the trial for the assessment of damages confirm the conclusion that this action in trespass is grounded upon the charge of an alleged tort of conversion arising out of a contract between the parties.

---

[6] Municipal Court Rule No. 45 did not amend or repeal the Act of 1842. It reads as follows:—"45. All writs of capias ad respondendum must be specially allowed and bail fixed by one of the judges, and shall be founded upon *an affidavit of the cause of action*, filed with the praecipe for the writ." (Italics supplied.)

*The legal insufficiency of the affidavit is self-evident.*[7] *No one is liable to arrest upon a capias ad respondendum writ to recover a debt founded upon contract. The capias writ is not allowable upon the charge of a constructive tort. The action of conversion will not lie for current money.* It would have been the duty of the court to quash the capias writ upon motion therefor.[8]

It is settled law that actions originating ex contractu cannot be instituted by the process of a capias ad respondendum writ. In such cases, *the defendant is not liable to arrest upon a capias.*[9]

The plaintiff construes an alleged act springing from a relationship originating in contract into a *mere tort*. The plaintiff attempts to have the court regard the act thus allegedly done as done in total disregard of the relationship out of which it arose and the circumstances in which it occurred. He grounds the right to the writ upon an alleged *constructive* tort, to wit, the conversion of current money by his agent.

Authoritative judicial decisions ranging through more than a century and a quarter of judicial history bear witness to the condemnation of similar attempts of *duress per minas* by the use of the penal writ of capias ad respondendum allowed and issued upon the ex parte precept of an averring party. The Supreme Court has held uniformly that the benefits and safe-

---

[7] Blanco v. Lauradon et al., 11 Phila. Repts. 368 (11/27/1876), infra; Hammer v. Ladner, et al., 17 Phila. Repts. 315 (9/27/1884), infra, citing, inter alia, Orton v. Butler, 5 B. & Ald. 652; 1 D. & R. 282, S. C. 1 Ch. Pl. 148 (5/3/1822); Ross v. Dever, 298 Pa. 146, 149-151, (11/25/29).

[8] Gallagher v. Norcross, 7 Phila. Repts. 623, 624 (1870).

[9] Blanco v. Lauradon et al., 11 Phila. Repts. 368 (11/27/1876). See also infra "Was the Service of the Writ Lawful?"

guards of a defense to an action upon a contract cannot be abrogated by alleging a constructive tort and the device of the use of an ex delicto form of action. The nature of the plaintiff's acts are not changed by denominating the action an action in trespass for conversion or deceit or fraud or negligence as bailee.

Prior to the Act of July 12, 1842 attempts were made to hold minors liable for conversion, for deceit, for false and fraudulent representations, for negligence as bailee by reason of an alleged breach of a contract. Each and every attempt was condemned. The following decisions exemplify the fact:

*Curtain v. Patten, 11 S. & R. 305 (6/21/1824)*, Duncan, J., was an attempt to construe an act arising out of a relationship originating in contract as a tort, namely, false representation and deceit. The court said, inter alia:

"Lord Chief Justice KEELING, expressed great indignation at the attempt to charge an infant in tort, upon that which was the foundation of an action of *assumpsit*, and said, 'We will stay the judgment forever, else the whole foundation of the common law will be at stake.'" (310)

*Penrose v. Curren, 3 Rawle 351 (2/2/1832)*, Rogers, J., was an attempt to construe a contract of hiring as a conversion. The court said, "The foundation of the action is contract, and disguise it as you may, it is an attempt to convert a suit, originally in contract, into a constructive tort so as to charge the infant." (353)

In *Wilt v. Welsh, 6 Watts 9 (1837)*, Gibson, C. J., affirming Penrose v. Curren, supra, held that the form of the action cannot alter the nature of the transaction. Founded in contract (bailment), the positive breach of the contract cannot be construed to be a conversion. The Chief Justice said:

"The theory on which a breach of contract has been thus turned into a trespass, is as incomprehensible to me as the theory on which a common recovery bars an entail; . . ." (13)

The principles upon which these cited cases were decided were those which were held to govern the application of the Act of July 12, 1842 as the following cited cases reveal; such too is the law today.

In *Bowen v. Burdick, 3 Clark 226 (12/1/1845)*, "The affidavit set forth in substance, that the defendant had obtained goods and merchandise, . . . from the plaintiff, by means of representations . . . ., which the affiant averred to be false and fraudulent,". (227) Judge Sharswood, in interpreting and construing the Act of July 12, 1842, said, inter alia:

"Fraud vitiates everything it touches; and no case can well be imagined of a fraudulent contract in which the party injured has not his election to repudiate the contract, and pursue his remedy in an action in form *ex delicto*." (227)

Continuing he said:

"It is the settled law of Pennsylvania, that the election of the plaintiff in cases of this character to proceed in an action in form *ex delicto*, shall not deprive the defendant of any substantial privilege or defence." (228)

*Gallagher v. Norcross, 7 Phila. Repts. 623; Leg. Int., 1870, p. 44*, "was a *capias* in case for deceit. The plaintiff's affidavit set forth that defendant had falsely represented that he was doing business for a responsible principal, who would meet all his obligations, and that relying on these statements the plaintiff sold goods to the defendant at different times, . . ." (623) Justice Agnew set forth the purpose of "the non-imprisonment law of 1842, forbidding the arrest under the original process, and authorizing the defendant to be arrested and held only under the warrant of a judge,

if convinced that the debt was fraudulently con-
tracted." Justice Agnew said, inter alia, that the Act
abolished " '. . . the *arbitrary and badly controlled
discretion of a party:'* . . . 'The Act abolished that
power of creditors.' And even when *prima facie* fraud
is established by the plaintiff's affidavit, 'the Act did
not even then abandon the debtor to the mercy of his
creditors, but subjected him to the scrutiny of the
judge after full notice of what was alleged against
him, and with full opportunity to repel every allega-
tion of the creditor to the satisfaction of the judge:' "
Continuing he said, "It is, therefore, obvious to my
mind that this action is an evasion of the principle
of the Act of 1842. It is not an action founded merely
in tort, but an attempt to elude the effect of the con-
tract on the remedy, by seizing hold of a circumstance
leading to the contract. . . . To call it an action for
deceit does not alter the nature of the plaintiff's own
acts." (624)

In *McCauley v. Salmon et al, 14 Phila. Repts. 131;
Leg. Int., Vol. 37, p. 262 (1880)*, "the plaintiff issued
a *capias* in case for negligence as bailee, and filed an
affidavit to hold to bail, alleging" that "The defendants
hired a horse and carriage of the plaintiff, and while
in their charge, negligently left them standing in the
street unsecured, while they entered a house. The
animal took fright while thus temporarily abandoned
and ran into the river, losing its own life and causing
the destruction of the carriage." The court held that
when an action ex contractu will lie the plaintiff can-
not obtain the right to issue a capias by electing to
sue in tort.

In *Hammer v. Ladner, 17 Phila. Repts. 315; Leg.
Int., Vol. 41, p. 376 (9/27/1884)*, President Judge
Thayer, after calling attention to the power conferred
by the Act of 1836, said that the Act of 1842 "took

away this cruel and arbitrary power in all cases (with certain enumerated exceptions) where the cause of action arose out of any contract *express or implied.* . . ." (315) (Italics supplied.)

After reviewing the scope of the Act of 1842 and the procedure thereunder, he said, inter alia:

"But the act of 1842, while it effected this great and beneficent revolution and forever abolished imprisonment for debt in Pennsylvania, provided, at the same time, a complete and effective system for holding fraudulent debtors to a just responsibility and for visiting them with just punishment if convicted of a fraudulent insolvency. . . . *The capias ad respondendum* is abolished in every case where the alleged fraud originated in the breach of a contract, and where that appears no ingenuity in selecting a form of action *ex delicto* can prevent the application of the act of 1842, or break down the guaranty which that act affords to even fraudulent debtors that they shall have a preliminary hearing before a judge before being sent to prison." (316)

Judge Thayer said in conclusion:

"The affidavit in the present case sets forth that the defendants were employed as brokers by the plaintiff for a certain hire and reward to sell certain stocks for him and to purchase others with the proceeds, that they sold the stock placed in their hands, and instead of purchasing other stocks in accordance with the contract of employment fraudulently appropriated the proceeds, together with other moneys furnished for the purchase of the stocks, to their own use. That this was a gross fraud, which might well have furnished the ground for an application to a judge for a warrant of arrest, is too clear to admit of doubt, but that the fraud arose out of an express contract between the parties is equally clear from the plaintiff's statement of the case in the affidavit. It is therefore clearly a case

within the act of 1842, and the plaintiff should have proceeded in accordance with that act and brought the defendants before a judge to answer an application for a warrant of arrest. He cannot, as we have already seen, by his election to bring *trover*, deprive the defendants of the benefit of the preliminary hearing before a judge secured to him by the act of 1842. I may add that the affidavit considered as an affidavit in *trover* is of doubtful sufficiency, for it is well settled that *trover* will not lie for shares of stock, though it will for the certificates, as it does for a bond or a deed: *Neiler* vs. *Kelley*, 19 P. F. Smith, 403; *Sewall* vs. *The Bank*, 17 S. & R. 285. Neither will it lie for money generally, although it will for so many pieces of gold or silver, or so many bank notes: *Orton* vs. *Butler*, 5 B. & Ald. 652; I D. & R. 282, S. C. 1 Ch. Pl. 148. But we prefer to rest our decision upon the point first stated, viz., that wherever a debt or obligation has, in the language of the second section of the act of 1842, been fraudulently contracted or incurred, there the proper remedy of the creditor is an application for a warrant of arrest and not a *capias ad respondendum*." (318)

Assuredly, the cited authoritative judicial-decisions condemn the allowance and issue of the writ in the instant case and establish its unlawfulness.

### Was the Service of the Writ Lawful?

Now as to the service of the capias writ. Was the service lawful? Can there be a lawful service of an unlawful writ?

It would appear that the service was made to conform to the language of Section 1, Clause 6(b) of the Act of July 9, 1901, P. L. 614, 12 P.S. Sec. 304. Section 1, Clause 6(b) of the said Act of 1901 reads as follows:

"(b) If the defendant be a minor or married woman, or *if from any cause the defendant is liable*

*to arrest* but is not arrested, then by serving the writ as in case of a summons; in which event the cause shall proceed with the same effect as if a summons in trespass had been duly served, and in that case, *if the defendant was liable to arrest on the original writ* but was not arrested, alias and pluries writs may issue at any time prior to final judgment in the cause, and the defendant may be arrested by virtue thereof, with the same effect *as if arrested on the original writ.*" (Italics supplied.)

The process act in terms states that the service of the capias writ may be made as outlined therein "if from any cause the defendant is liable to arrest". Its application is dependent upon the fact that the defendant was liable to arrest upon the capias writ. If he was not, the provision of the act does not apply and "serving the writ as in case of a summons" is invalid. That the defendant was not liable to arrest is incontrovertible for no one is liable to arrest upon writs of capias in actions for the recovery of debts founded upon contract.[10]

The primary question, as has been stated, is the legality of the allowance and issue of the writ. Indubitably, if the allowance and issue of the writ were without warrant of law, the service thereof and all proceedings thereunder and by reason thereof were and are as nothing, the defendant not having entered an appearance or filed a pleading. Service, the essential accessory of a writ, howsoever made, cannot legalize an illegal writ. The invalidity of the service arises from the invalidity of the writ. It follows, therefore,

---

[10] Blanco v. Lauradon et al., 11 Phila. Repts. 368 (11/27/1876), supra. Attention is called to the severe condemnation of the allowance and issue of the capias writ. See also Hammer v. Ladner, supra, 316.

that the service of the unlawful writ allowed and issued in the instant case is as though it had not been.

### Did the Trial Court Have Jurisdiction?

Did the trial court have jurisdiction? If it did not, the trial had was a nullity and it was the duty of the court so to declare it.

"The question of jurisdiction is ever-present, inheres in every cause of action and must be met and answered by the court at any stage of the proceedings, irrespective of whether or not the question be raised by any party to the action." [11]

The prior entry of a valid judgment is the conditio sine qua non to the authority of the court to conduct a trial under Pa. R. C. P. No. 1047 with resultant verdict or finding.[12] If the judgment entered by the prothonotary be void, there is no authority in a court to conduct a trial based upon such judgment. The authority of the prothonotary to enter the judgment and the authority of the court to conduct a trial by reason thereof are conferred by Pa. R. C. P. No. 1047. The rule reads:

"The prothonotary, on præcipe of the plaintiff, shall enter judgment against a defendant by whom no appearance or pleading to the complaint is filed. In this case, the damages shall be assessed at a trial at which the issues shall be limited to the amount of the damages."

Now the judgment in the instant case stems from the capias ad respondendum writ, its allowance and issue upon special bail. Since the writ was allowed and issued without warrant of law, the writ and all its

---

[11] Metropolitan Hospital, Inc. v. School Dist. of Phila., 64 D. & C. 384, 385 (7/30/48).

[12] See Nochumson v. Garland, 75 D. & C. 552 (2/16/51).

sequences are without legal validity: its service, the service of plaintiff's complaint, the entry of judgment for alleged default. It was the duty of the trial court to take cognizance of the record facts. Since the Act of July 12, 1842, P. L. 339, an affidavit to hold to bail followed by the issue of the penal writ of capias ad respondendum upon special bail calls for scrutiny. No court, trial or appellate, is bound by the entry of a judgment the invalidity of which appears of record; nor is the party against whom the judgment is entered. A contrary conclusion is supported neither by reason, morals nor judicial authority.

The decision of the Supreme Court in Pantall v. Dickey, 123 Pa. 431 (1/7/89) is in point in support of the right and duty of the trial court when confronted with a record such as the instant case. In this cited case the want of jurisdiction of the justice of the peace and the consequent invalidity of the judgment entered appeared upon the transcript of the justice by reason of the failure to comply with the statutory provisions of section 26 of the Act of July 12, 1842, P.L. 339, 345. The Supreme Court held that the time intervening between the issue and the return of the writ had exceeded the period fixed by the statute and that "the act was therefore clearly and palpably transgressed." Continuing the Court said:

*"If there was no lawful writ there was no jurisdiction of the alderman to entertain the case, and hence he could render no valid judgment.* Of course, the judgment could have been and would have been reversed upon certiorari. But *the judgment being void* for want of jurisdiction to enter it, it matters not how, or in what mode, or at what time the objection on that ground is brought to the attention of a supervising court. Being void, *it has no efficacy at any time.* The defendant can afford to disregard it until an effort is made to enforce it." (438)  (Italics supplied.)

In Gilbert Estate, 350 Pa. 13 (6/30/44), citing, inter alia, Pantall v. Dickey, supra, it was said:

"We note that the question of jurisdiction was not presented to the auditing judge in the court below and we are therefore deprived of the research and views of the able court below. We must, however, consider it. . . ." (16)

Thereupon the decree of the lower court was reversed. Is not such reversal an injunction upon a trial court to scrutinize the record and determine on its own initiative its jurisdiction in the premises?

The contention of plaintiff's counsel resolves itself into the assertion that the writ having been allowed by a judge of this court, the lawfulness of its issue is unimpeachable, cannot be questioned by the trial court at the time of the trial of the action in the court in which it was initiated by the writ. The allowance of the writ by a judge of this court, so runs the contention, establishes its validity. Upon this assertion the validity of the writ and all of its sequences are founded, to wit, its service, the service of the complaint, the entry of the default judgment by the clerk of the court and the authority of the court to conduct a trial to assess damages under Pa. R. C. P. 1047. The sweep and consequence of the contention are startling. Counsel for the plaintiff presented no precedent authority in support of this doctrine of judicial infallibility and consequent finality of a particular method of initiatory procedure. Until the assertion was made by counsel for the plaintiff the trial judge was and, despite the dictum of counsel, still is of the opinion that the jurisdiction of a court over the person of the defendant and/or of the subject matter of the action can be raised, as the Supreme Court has said, "it matters not how, or in what mode or at what time", that "a void judgment, . . . is a mere blur on the record and which it is the duty of the court of its own motion

to strike off, whenever its attention is called to it", that this duty is mandatory,[13] more emphatically so when the invalidity of the allowance of the writ and the consequent default judgment entered by the clerk of the court for want of an appearance by the defendant are apparent on the face of the record.

### Order of the Trial Judge

Now as to the Order of the Trial Judge, its form and content. The substantive and procedural law applied have received authoritative judicial approval.

In Romberger v. Romberger, 290 Pa. 454 (6/25/27) the court said:

"The order was properly made. The right of a prothonotary to enter judgment on a note is statutory and must be strictly construed: Oberlin v. Parry, 287 Pa. 224. The judgment was void . . . , as a void judgment, it could be stricken off at any time: . . ." (citing cases). (456)

"No laches can run against a void judgment, which is a mere blur on the record and which it is the duty of the court of its own motion to strike off, whenever its attention is called to it." (457)

In Haverford Twp. S. D. v. Herzog et al., 314 Pa. 161, (1/30/34) it was said, inter alia:

". . . defendant never had a valid judgment since the prothonotary had no power to enter it: it was a nullity and without legal effect. Hence, the passage of time, however great, does not enter into a consideration of its validity: . . ." (citing cases). (164).

Manifestly the Order striking off the judgment and declaring the trial a nullity accords with the cited judicial decisions.

---

[13] "Jurisdiction is a matter of law which the court must judicially notice; in fact, a court is bound to take notice of a lack of jurisdiction, even though no objection is made on that ground." Standard Penna. Prac., Vol. 1, Sec. 49, p. 44.

## Conclusion

This opinion has been lengthened beyond the need to make manifest the validity of the Order made by the trial judge. The citation of and the quotations from opinions of the jurists who charted the course of the judicial administration of justice during the infancy of the Commonwealth, it is thought, are needed lest we forget the principles upon which it was founded. With eyes turned to foreign lands and stirred by recitals of arbitrary and unjust imprisonment and duress per minas, we must be alert, vigilant to prevent the happening at home under the guise and form of legal process of that which we condemn in others. A polite sheriff, a gracious jailor are no compensation for an imprisonment-mandate issued upon the charge of an ex parte averment without opportunity to be heard to repel the charge. The injustice, the stigma, the hurt of the arresting mandate of a court of record, *howsoever served by the executive officer of the court*, are not obliterated nor is compensation therefor made by its subsequent rescission.[14]

To recapitulate: The allowance and issue of the writ of capias ad respondendum upon special bail were unlawful; the writ being unlawful, its sequences, to wit:—the service of the writ, the service of the complaint, the entry of the default judgment by the prothonotary, each and all were without warrant of law and as a consequence thereof the court was without jurisdiction to conduct the trial. Hence it is that the Order of the trial court striking off the judgment and declaring the trial a nullity was just and in precise conformity with the law of this Commonwealth.

---

[14] Best is it that courts as well as "all plaintiffs, attorneys, clerks, and sheriffs' officers," give heed to the warning in Blanco v. Lauradon et al., 11 Phila. Repts. 368, 369 (11/27/1876), supra, for it is written "plain upon tables, that he may run that readeth it." Habakkuk, C.2 v. 2.